UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    THOMAS P. KELLEY and                Case No:     08-21684
    CHERYL ANN KELLEY,                 Ch. 7

    Debtors.

_____/

THOMAS P. KELLEY and
CHERYL ANN KELLEY,

    Plaintiffs,

v.                                       Adv. Pro. No: 08-02138

UNITED STATES OF AMERICA,
DEPARTMENT OF TREASURY,
INTERNAL REVENUE SERVICE,

    Defendants.

_____/

Opinion Denying Defendants'
Motion to Dismiss or, Alternatively, for Abstention

      In this adversary proceeding, the Debtors seek a determination about the dischargeablity

of an approximate $35,000 debt. This debt consists of an assessment issued by the Internal

Revenue Service against the Debtors as "responsible persons" under 26 U.S.C. § 6672. The

United States of America, on behalf of the IRS, moved for dismissal on lack of jurisdiction

grounds under 28 U.S.C. § 1334(b), or in the alternative, for the Court to abstain from hearing

this proceeding under 28 U.S.C. § 1334(c)(1). The Debtors filed a response and brief in

opposition to the IRS's motion. A hearing was held on the United States' motion. At the

conclusion of the hearing, the Court took this matter under advisement.

The Court has engaged in a thorough review of the parties' briefs, the decisions relied on by them, and the allegations in the Debtors' Complaint. With consideration of the relevant Sixth Circuit precedent, the Court concludes that its jurisdiction to hear the issues involved in this adversary proceeding is firmly rooted in 28 U.S.C. § 1334(b) and, as such, the Court will deny the United States' motion to dismiss the Debtors' Complaint on lack of subject matter jurisdiction grounds. After weighing the factors under 28 U.S.C. § 1334(c)(1), the Court also denies the United States' request that this Court abstain from hearing this proceeding.

## I. Background

On June 6, 2008, Thomas P. Kelley and Cheryl Ann Kelley (the "Debtors") filed a joint Chapter 7 voluntary petition, certain bankruptcy schedules, and their statement of financial affairs. (Case no. 08-21684). In their schedule D, the Debtors listed the Internal Revenue Service as a secured creditor due to a "tax levy" held by the IRS on property located at 244 S. Houghton Road, Houghton Lake, Michigan, which the Debtors represented that they owned an undivided ½ interest in as tenants in common with another couple, Brian and Cindy Minto. In their schedule E, the Debtors listed the Internal Revenue Service as a creditor holding an unsecured priority claim "for personal liability for trust fund taxes not collected by Oak Heights, Inc." for 2000 through 2007. The Debtors also represented on their schedule E, that a co-debtor existed on this claim and that the amount of the claim was unknown. In their schedule H, the Debtors listed Brian and Cindy Minto as the co-debtors on the IRS's priority claim. In their statement of financial affairs, the Debtors listed their 50% interest in Oak Heights Corporation ("Oak Heights") with Brian and Cindy Minto, which business involved the operation of an adult

2

foster care from 1997 to 2007. On July 15, 2008, the Chapter 7 Trustee issued a "Report of No Distribution," concluding that "there are no assets to administer for the benefit of creditors of this estate." The Debtors were granted a discharge on September 16, 2008. (Docket no. 28).

On October 6, 2008, the Debtors commenced an adversary proceeding (no. 08-02124) against the United States of America, the Department of Treasury, and the Internal Revenue Service. On November 5, 2008, this adversary proceeding was dismissed without prejudice due to improper service. For a second time, the Debtors filed a two count complaint against the United States of America, Internal Revenue Service and the Department of Treasury on November 9, 2008. In Count I, the Debtors seek a determination about whether the debt they allegedly owe the IRS is a dischargeable debt because they dispute their liability for trust fund penalties as "responsible persons" under 26 U.S.C.§ 6672. In Count II, the Debtors request that the Court enter an order providing that the IRS is subject to the discharge injunction under 11 U.S.C. § 524(a) and is prohibited from engaging in any collection efforts against the Debtors.

In their Complaint, the Debtors allege that they filed their complaint pursuant to Fed.R.Bankr.P. 7001 "because injunctive relief is requested." (Compl. ¶ 3). The Debtors further allege that subject matter jurisdiction exists as the adversary proceeding "is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)" because it involves a "determination as to the dischargeability of certain debts." (Compl. ¶ 3). The Debtors make the following factual allegations in the Complaint. In 1999 they formed the corporation Oak Heights, Inc., with another couple, Brian and Cindy Minto. (Compl. ¶ 7). Oak Heights "provided care for profit to disabled and elderly persons and incurred employee-related federal tax liabilities." (Compl. ¶ 8). The Debtors were involved in Oak Heights "as shareholders, officers, and employees," but that

3

they "ceased worked for the corporation in November 2007." (Compl. ¶¶ 9, 10). Oak Heights, Inc., was "automatically dissolved on July 15, 2008, for failure to comply with state reporting requirements." (Compl. ¶ 7). The Debtors state that "[a]t all relevant times, Brian Minto and Cindy Minto had control over all monies and assets and were responsible for payment of all liabilities" (Compl. ¶ 11) and that the IRS attempted "to collect monies from [the] Debtors for employee wage withholding taxes and other liabilities, penalties, and taxes, arising under 26 U.S.C. [6672(a)] . . . [of] approximately $35,000.00." (Compl. ¶ 12). The claims of the IRS "are in the nature of "claims" as defined at 11 U.S.C. § 101(5)." (Compl. ¶ 13).

## II. <u>Discussion</u>

A.     <u>Standard for Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(1) is made applicable to this proceeding under Bankruptcy Rule 7012(b)(1). Rule 12(b)(1) provides for dismissal of a complaint over which a court lacks subject matter jurisdiction. "A motion to dismiss pursuant to Rule 12(b)(1) may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." <u>Golden v. Gorno Bros., Inc.</u>, 410 F.3d 879, 881 (6th Cir. 2005). "A facial attack is a challenge to the sufficiency of the pleading itself." <u>United States v. Ritchie</u>, 15 F.3d 592, 598 (6th Cir. 1994). In this situation, the court must take the material allegations of the complaint as true and construe the allegations in the light most favorable to the nonmoving party. <u>Id</u>. (citation omitted). In contrast, a factual attack . . . "is a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. <u>Id</u>. (citing <u>Ohio Nat'l Life Ins. Co. v. United States</u>, 922 F.2d 320,

325 (6th Cir. 1990)); see also RMI Titanium Co. v. Westinghouse Electric Corp., 78 F.3d 1125,

1134 (6th Cir. 1996) (explaining that a critical distinction exists between a Rule 12(b)(1) motion

based on an attack to a complaint on its face and one based on a factual attack to the existence of

subject matter jurisdiction). A court has "wide discretion to allow affidavits, documents and

even a limited evidentiary hearing to resolve disputed jurisdictional facts." Ohio Nat'l Life Ins.

Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990) (citations omitted). A plaintiff bears the

burden of proving the existence of subject matter jurisdiction when the factual basis for

jurisdiction is challenged. Abbott v. Michigan, 474 F.3d 324, 328 (6th Cir. 2007) (quoting DLX,

Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004)).

      B.    <u>Federal Bankruptcy Jurisdiction</u>

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded

in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1996). Federal

district courts are vested with jurisdiction over bankruptcy cases and civil proceedings under 28

U.S.C. § 1334, which states in relevant part:

> (a) Except as provided in subsection (b) of this section, the district
> courts shall have original and exclusive jurisdiction of all cases
> under title 11.
>
> (b) Except as provided in subsection (e)(2), and notwithstanding
> any Act of Congress that confers exclusive jurisdiction on a court
> or courts other than the district courts, the district courts shall have
> original but not exclusive jurisdiction of all civil proceedings
> arising under title 11, or arising in or related to cases under title 11.

A district court may then refer to the bankruptcy judges of their district "any or all cases under

title 11 and any or all proceedings arising under title 11 or arising in or related to a case under

title 11." 28 U.S.C. § 157(a). The district court's bankruptcy jurisdiction that may be exercised

by bankruptcy judges is then limited under 28 U.S.C. § 157(b)(1) by only enabling bankruptcy judges to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under [28 U.S.C. §] 158." A non-exhaustive list of matters designated as core proceedings is described under 28 U.S.C. § 157(b)(2)(I). A bankruptcy judge, however, may still hear a "non-core" proceeding that is related to a case under title 11, but is required to "submit proposed findings of fact and conclusions of law to the district court" for the district court judge to consider prior to the district court judge's entry of any final order or judgment. 28 U.S.C. § 157(c)(1).

An important distinction exists between the determinations of whether a district court has jurisdiction under 28 U.S.C. § 1334(b) and whether a proceeding to be heard by a bankruptcy judge is a core or non-core proceeding. Hart v. J. Anthony Logan and Brooks, et al., (In re Hart), Case No. 05-8001, 326 B.R. 901, 2005 WL 1529581 at *3 (B.A.P. 6th Cir., June 24, 2005). "[T]hese aspects of bankruptcy law are not interchangeable. The status of a proceeding as core or non-core does not affect the issue of jurisdiction. . . . Subject matter jurisdiction is the court's authority to entertain an action between the parties before it." Id. (internal and other citations omitted). "[T]he core/non[-]core determination under 28 U.S.C. § 157(b) and (c) implicates the bankruptcy court's power to render final orders and judgments; it is not a determination that the bankruptcy court either possesses or lacks subject matter jurisdiction over a particular proceeding." Id. (quoting Holly's Inc. v. City of Kentwood (Matter of Holly's Inc.), 172 B.R. 545, 556 (Bankr. W.D. Mich. 1994), aff'd, 178 B.R. 711 (W.D. Mich. 1995)).

The Sixth Circuit Court of Appeals has stated that

> Section 1334 lists four types of matters over which the district court has jurisdiction: (1) "cases arising under title 11," (2) "proceedings arising under title 11," (3) proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11. The first category refers merely to the bankruptcy petition itself, filed pursuant to 11 U.S.C. §§ 301, 302, or 303.

In re Wolverine Radio, 930 F.2d 1132, 1141 (6th Cir. 1991) (citing Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 583 (6th Cir. 1990)). Although the statutory language of § 1334(b) explicitly distinguishes between three types of civil proceedings, the Sixth Circuit Court of Appeals held in Wolverine Radio that

> [f]or the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between the second, third, and fourth categories (proceedings "arising under," "arising in," and "related to" a case under title 11). These references operate conjunctively to define the scope of jurisdiction. . . . Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy [case].

Id. at 1141 (quoting Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987); see also Thickstun Brothers Equipment Co. v. Encompass Services Corp (In re Thickstun Bros. Equipment Co., Inc.), 344 B.R. 515, 520 (B.A.P. 6th Cir. 2006) (recognizing that Sixth Circuit precedent only requires a determination that a matter is at least "related to" a bankruptcy case to fall within the bankruptcy jurisdiction of a district court under § 1334(b)) and Matter of Holly's Inc., 172 B.R. at 557 (explaining that "[i]n determining whether it has jurisdiction, a bankruptcy court need only determine whether the proceeding falls *outside* the parameters of bankruptcy jurisdiction, as defined by 28 U.S.C. § 1334.") (emphasis in original).

In Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conneticut, et al., (In re Dow Corning Corp.), 86 F.3d 482, 489 (6th Cir. 1996), the Sixth Circuit Court of Appeals recognized its previous adoption of the "related to" jurisdictional standard established

by the Third Circuit Court of Appeals in <u>Pacor Inc. v. Higgins</u>, 742 F.2d 984 (3rd Cir. 1984) and explained that

> the "usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." An action is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." A proceeding "need not necessarily be against the debtor or against the debtor's property" to satisfy the requirements for "related to" jurisdiction. However, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]." . . . Instead, "there must be some nexus between the 'related' civil proceeding and the title 11 case."

86 F.3d 482, 489 (6th Cir. 1996) (citing <u>Pacor v. Higgins</u>, 742 F.2d at 994) (internal citations omitted)).

The <u>Dow Corning</u> panel, however, further elaborated on the Sixth Circuit's position on "related to" jurisdiction. First, the panel pointed out that while the court in <u>Pacor</u> viewed the effect on the administration of a bankruptcy estate (i.e., "absence of automatic liability") as a dispositive factor in determining the existence of "related to" jurisdiction, decisions subsequent to <u>Pacor</u>, including those issued by the Third Circuit Court of Appeals, have found "related to" jurisdiction to exist when it is unknown whether a proceeding will have an effect on the administration of the bankruptcy estate. The <u>Dow Corning</u> panel explained that

> A key word in [the] test is "conceivable." Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on "the debtor's rights, liabilities, options, or freedom of action" **or** the "handling and administration of the bankrupt estate."

<u>In re Dow Corning Corp.</u>, 86 F.3d at 491 (quoting <u>In re Marcus Hook Dev. Park Inc.</u>, 943 F.2d 261, 264 (3rd Cir. 1991) (emphasis added). Second, the <u>Dow Corning</u> panel noted a prior

holding in <u>Kelley v. Salem Mortgage Co., et al</u> (<u>In re Salem Mortgage Co.</u>), 783 F.2d 626, 635 (6th Cir. 1986), that "Section 1334(b) 'does not require a finding of definite liability of an estate as a condition precedent to holding a[] [proceeding to be] related to a bankruptcy [case]." <u>See also</u> <u>In re Wolverine Radio</u>, 930 F.2d at 1142 (reasoning that "[u]nder Pacor, the court has jurisdiction over proceedings that "could *conceivably* have *any* effect" on the debtor or the debtor's estate") (emphasis in original).

Based on these principles then, a court may conclude that "related to" subject matter jurisdiction exists in an adversary proceeding if the proceeding *either* impacts the rights, liabilities, options or freedom of action of the debtor *or* the handling and administration of the bankruptcy estate. Only one of these conditions must exist for a proceeding to fall within the "related to" jurisdictional grant under § 1334(b).

    1.    <u>Analysis</u>

Although the United States relies on the "related to" jurisdictional test standard expressed in <u>In re Wolverine Radio Co.</u> and <u>In re Dow Corning Corp</u> to support its argument, it contends, however, that "[f]or jurisdiction to attach, the anticipated outcome of the [proceeding] must both (1) alter the rights, obligations, and choices of the action of the debtor, and (2) have an effect on the administration of the estate." (Def.'s Br. at 7 (Docket no. 4)). The United States asserts that this proceeding is "wholly unrelated" to the Debtors' bankruptcy case because the focus of the allegations in the Debtors' Complaint is their liability for trust fund penalty assessments under 26 U.S.C. § 6672. According to the United States,

> The effect of allowing this adversary proceeding to go forward would be to circumvent the administrative and judicial remedies available outside of bankruptcy, without justification. After paying a small part of the penalty equal to the tax for one employee for one payroll period, the [Debtors] may claim a

> refund. If the Internal Revenue Service disallows the claim for refund, or fails to act within six months, then the [D]ebtors may bring a suit in district court or the Court of Federal Claims to determine their liability. . . . There is no reason why the [D]ebtors cannot invoke their right to a determination of the amount of their liability outside of bankruptcy.

(Def.'s Br. at 4 (citing 26 U.S.C. § 6672(c)(2))). The United States further argues that no bankruptcy purpose would be served by this Court hearing the issues involved in this proceeding because there are no assets to be administered or any proof of claims to be allowed or disallowed in this Chapter 7 no asset case. As a result then, the United States contends that any determination by this Court as to the Debtors' tax debt will not have any impact on the bankruptcy estate, which it maintains is a jurisdictional requirement.

The Debtors disagree. They contend that subject matter jurisdiction exists in this proceeding under 28 U.S.C. § 1334(b) and that this proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The Debtors maintain that the point raised by the allegations in their Complaint is that they dispute whether they are indebted to the United States for trust fund penalty assessments as "responsible persons" arising from their involvement with Oak Heights. As such, the Debtors contend that this proceeding involves a determination about the dischargeability of a debt. In addition, the Debtors argue that this proceeding is at least "related to" their Chapter 7 case because it involves a fundamental bankruptcy purpose — their opportunity to receive a fresh start from the § 727(a) discharge awarded to them.

The Court concludes that it has subject matter jurisdiction in this adversary proceeding because any determination made in this proceeding is at least related to the Debtors' title 11

case.[1]  In this proceeding, the Debtors seek a determination that their alleged debt to the IRS is covered by the discharge awarded by this Court.  This will require the Court to interpret several Bankruptcy Code sections to construe the scope of the Debtors' § 727(a) discharge.

Section 727(a) of the Code requires that a bankruptcy court grant a debtor a discharge of all debts that arose before the commencement of a Chapter 7 case unless one of enumerated exceptions under § 727(a) or (b) exists.  Section 727(b) expressly provides that a debt covered under § 523 is excluded from a § 727(a) discharge.  Under § 523(a), a discharge under § 727(a) does not discharge a debtor from any debt "for a tax . . . of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed[.]" 11 U.S.C. § 523(a)(1)(A).  Section 507(a)(8)(C) covers taxes a debtor is required to withhold or collect in any capacity.  This Code section describes the trust fund taxes at issue in this proceeding.  4 COLLIER ON BANKRUPTCY ¶ 507.10[4], at 507-72.6-74 (Alan N. Resnick & Henry  J. Sommer eds., 15 ed., rev. 2009).

> Section 3102 of the Internal Revenue Code of 1954 requires an employer to withhold social security taxes imposed on its employees and section 3402(a) of the [Internal Revenue] Code requires the withholding of income taxes from wages of employees.  Withholding taxes are not simply a debt; they are part of the wages of the employee, held by the employer in trust for the government. The "trust fund taxes" are for the exclusive use of the Government and are not to be used to pay the employer's business expenses, including salaries, or for any other purpose.
>
> Section 6672 provides that "any person" who willfully fails to account for and pay over withholding taxes shall be liable for the full amount not paid over to the government.  Liability attaches if an individual meets two requirements.  He must be a "responsible person" under the statute, and he must "willfully" fail to pay over to the government the amount due.  Congress enacted section 6672 to protect the government against losses by providing it with another source from which to

---

1.  In fact, this adversary proceeding to determine the dischargeability of the Debtors' debt, under 11 U.S.C. § 523, to the IRS actually arises under or arises in a title 11 case.  28 U.S.C. § 1334(b).

collect the withheld taxes.

Gephart v. U.S., 818 F.2d 469, 472-73 (6th Cir. 1987) (internal citations omitted).

The Debtors' Complaint alleges that the IRS seeks to collect a $35,000 debt from them due to their status as "responsible persons" under 26 U.S.C. § 6672. Another allegation pled by the Debtors in their Complaint is that they "are not responsible persons as contemplated by 26 U.S.C. § 6672." The Complaint does not contain any allegations that the Debtors' liability has been conclusively proven by the IRS or adjudicated in another forum. The United States' assertion that the Debtors' have the ability to commence an action in another forum to determine the extent of their personal liability under § 6672 definitely indicates that this issue is in dispute.

Under the Dow Corning analysis then, the Court concludes that this proceeding is related to the Debtors' title 11 bankruptcy case because a determination in this proceeding could conceivably impact the Debtors' liability, option, or freedom of actions as debtors in a Chapter 7 case.

> One of the primary purposes of the Bankruptcy [Code] is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." . . .The new opportunity in life and the clear field for future effort, . . . would be of little value to the wage-earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy.

Local Loan Co. v. Hunt, 292 U.S. 234, 244-45, 54 S.Ct. 695, 699 (1934) (internal citations omitted). If the Court concludes that the Debtors' debt to the IRS is excepted from their § 727(a) discharge as a nondischargeable debt under § 523(a)(1)(A), the Debtors will remain personally liable on the tax debt to the IRS. Conversely, if the Court reaches the opposite conclusion, the Debtors' tax debt to the IRS will be covered by their § 727(a) discharge and any personal

12

liability would be extinguished. Under either scenario, the Debtors' opportunity for a fresh start as provided by a § 727(a) discharge is in question. The nexus between this proceeding and the Debtors' title 11 case involves the Debtors exercise of their rights under 11 U.S.C. § 523(a) and Fed.R.Bankr.P. 4007(a) to obtain a determination about the dischargeability of a debt. This close link is more than sufficient for "related to" jurisdiction to exist in this adversary proceeding.

In addition, the Court rejects the United States' argument that for "related to" jurisdiction to exist the bankruptcy estate must be affected by the determinations rendered in this proceeding. First, the United States incorrectly reads the "related to" jurisdictional test established in Dow Corning Corp. Its position was, in fact, criticized and not followed by the Sixth Circuit in Dow Corning Corp.[2] Second, whether there is a bankruptcy estate to be administered is not implicated in a dischargeability of a debt proceeding under 11 U.S.C. § 523(a). Instead, the focus is on a debtor. The fundamental purpose in such a proceeding involves whether a debtor remains personally liable on a pre-petition debt because such debt is excepted from a § 727(a) discharge. In this matter, the question is simply – do the Debtors owe the tax debt that has been assessed by the IRS because of their status as "responsible persons" under 26 U.S.C. § 6672? This Court is capable of answering this question through its application of the pertinent test (and corresponding burdens of proof and production) as established in Gephart v. U.S., 818 F.2d 469, 472-73 (6th Cir. 1987).

---

2. The United States also argued that the lack of assets to be administered by the Chapter 7 Trustee is dispositive in regard to jurisdiction. The Court concludes that this fact should not be dispositive because a Chapter 7 debtor could intentionally fail to exempt an asset and thus not only create an estate but confer jurisdiction. Subject matter jurisdiction should not be conferred or denied on this basis alone.

13

The Court is also unpersuaded by the United States' reliance on <u>Ronning v. United States</u>, (<u>In re Ronning</u>), 82 A.F.T.R. 2d 98-6020, 6021-22 (Bankr. N.D. Ill. 1998).  <u>In re Ronning</u> is factually and substantive distinguishable from this proceeding.  The debtors in <u>Ronning</u>, like the Debtors in this matter, filed an adversary proceeding against the United States concerning their tax debts for payroll taxes under 26 U.S.C. 6672 as well as several years of income taxes.  The substantive issue in <u>Ronning</u>, however, did not involve subject matter jurisdiction under 28 U.S.C. § 1334(b).  Instead, the bankruptcy court in <u>Ronning</u> was required to determine whether the adversary proceeding before it was a core or non-core proceeding under 28 U.S.C. §§ 157(b) and (c)(1).  As recognized by the United States in its brief, this legal question is not currently before the Court.  (Def.'s Br. at 6-7 n.2 stating that "the distinction between core and non-core proceedings is not relevant here").  In addition, the debtors in <u>Ronning</u> conceded that their tax debt under 26 U.S.C. § 6672 was a non-dischargeable debt, which is directly contrary to the position taken by the Debtors in this proceeding.

C.     <u>Permissive Abstention under 28 U.S.C. § 1334(c)(1)</u>

Alternatively, the United States contends that this Court should abstain from hearing this proceeding as permitted under 28 U.S.C. § 1334(c)(1), which states in relevant part:

> Except with respect to a case under Chapter 15 of title 11, nothing in this section prevents a district court in the interests of justice . . . from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

As explained by the court in <u>Zack v. United States</u>, 224 B.R. 601 (Bankr. E.D. Mich. 1998):

> This statute codifies the so-called "permissive abstention doctrine" and "'demonstrate[s] the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction on the federal courts, but by the discretionary exercise of abstention when appropriate in a particular case.'"

Id. at 606 (citing Matter of Gober, 100 F.3d 1195, 1206 (5th Cir. 1996) (quoting Matter of Wood, 825 F.2d 90, 93 (5th Cir. 1987)). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." McDaniel v. ABN AMRO Mortg. Group, 364 B.R. 644 (Bankr. S.D. Ohio 2007) (quoting In re Nationwide Roofing & Sheet Metal, Inc., 130 B.R. 768, 778 (Bankr. S.D. Ohio 1991)). In analyzing whether abstention is appropriate,

> [c]ourts have listed the following non-exclusive factors as relevant: (1) the effect or lack of effect on the efficient administration of the estate if a court abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of this court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; and (13) any unusual or other significant factors.

Kmart Creditor Trust v. Conway (In re Kmart Corp.), 307 B.R. 586, 596-97 (Bankr. E.D. Mich. 2004) (citations omitted).

    1.    <u>Analysis</u>

After considering the factors for permissive abstention, the Court determines that there are not enough factors present in this proceeding for the Court to conclude that it is in best interest of justice for it to abstain from hearing this adversary proceeding. The Court will deny the United States' motion for abstention. As will be explained in more detail, factors (1), (4), (5), (6), (7), (9), (10), and (12) weigh against this Court exercising its discretion to abstain from hearing this proceeding. The remaining factors are inapplicable or inconclusive. The Court addresses each of the In re Kmart factors as follows:

15

1.     The effect or lack of effect on the administration of the bankruptcy estate

–

the United States contends that this factor favors abstention because there will be no impact on

the bankruptcy estate when the only parties to benefit from the relief sought in this proceeding

are the Debtors.  It relies on numerous decisions by bankruptcy courts exercising their discretion

to abstain in proceedings that involved the determination of a debtor's tax liability in chapter 7

no asset cases when the goals of 11 U.S.C. § 505(a)(1)[3] would not be accomplished.[4]  As recently

---

3.  Section 505(a)(1) provides as follows:

Except as provided in paragraph (2) of this subsection, the court may determine the
amount or legality of any tax, any fine or penalty relating to a tax, or any addition to
tax, whether or not previously assessed, whether or not paid, and whether or not
contested before and adjudicated by a judicial or administrative tribunal of
competent jurisdiction.

4.  In re Stone, 329 B.R. 882 (Bankr. M.D. Fla. 2005) (abstaining from determining debtor's
liability under § 6672 because any determination on the debtor's objection to tax claim under 11
U.S.C. § 505(a) subsequent to the filing of a report of no distribution in a chapter 7 case could not
have an impact on the administration of the bankruptcy case); Gossman v. U.S. (In re Gossman), 206
B.R. 264 (Bankr. N.D. Ga. 1997) (permissively abstaining in debtor's non-dischargeability of a tax
debt when no benefit to the administration of the estate would occur, purposes of § 505(a) would
not be realized, complexity of tax issues involved, and because the debtor failed to exhaust his other
administrative and legal remedies provided under the Tax Code); Starnes v. U.S. (In re Starnes), 159
B.R. 748 (Bankr. W.D. N. Ca. 1993) (applying factors under § 505(a) to conclude that the tax court
is the "more appropriate forum" to determine the debtor's joint income tax liability under 26 U.S.C.
§ 6013(e) when the IRS did not file a proof of claim, no bankruptcy purpose would be served in a
chapter 7 no asset case because unsecured creditors would still not receive any distribution, litigation
was only between the debtor and the IRS, sole party to benefit from determination would be the
debtor, and to retain jurisdiction would encourage "every taxpayer to ignore IRS requirements for
disputing tax liability" and seek determination from a bankruptcy court); Byerly v. Internal Revenue
Service, 154 B.R. 718 (Bankr. S.D. Ind. 1992) (determining at summary judgment stage that the
debtor's tax debt from her failure to file appropriate tax returns was excepted from discharge under
11 U.S.C. § 523(a) but declining to determine the amount of the tax debt because it would be
contrary to the purposes of § 505(a) when no distributions would occur in a chapter 7 no asset case);
Cain v. U.S. (In re Cain), 142 B.R. 785 (Bankr. W.D. Tex. 1992) (abstaining from hearing  non-
dischargeability of tax debt proceeding involving income taxes for 1987 and 1988 when debtor

16

explained by one court in a case cited by the United States:

> Section 505(a) was enacted with a couple of aims in mind. First, in order to facilitate the bankruptcy goal of expediting the administration of claims against the estate, § 505 was enacted to provide a forum for the speedy resolution of disputed tax claims so as to avoid any delay in the administration of the bankruptcy case. . . . In addition, Congress also sought to address a specific concern through the enactment of § 505(a)(1): to protect creditors from the dissipation of estate assets which could result if creditors were bound by [a] tax judgment which, the debtor, due to his failing financial condition, did not contest.
>
> . . .
>
> [C]onsistent with those goals [], § 505(a)(1) does not function as an alternative forum for tax litigation when such litigation would have no impact on the administration of [a] bankruptcy case. Instead, the intended beneficiaries of the aims served by § 505(a) are the general body of unsecured creditors—that is, the estate—not the debtor. In this way, debtors proceeding under Chapter 7, having surrendered their assets to the estate for administration, are normally not entitled to maintain actions under § 505(a)(1) to determine their tax liability, particularly where there exists no assets for distribution.

Kohl v. IRS, et al., (In re Kohl), 397 B.R. 840, 845 (Bankr. N.D. Ohio 2008) (internal citations omitted).

The Debtors disagree. They rely on bankruptcy court decisions that ruled on whether the

---

failed to timely pursue administrative procedures under the Tax Code and no bankruptcy purpose would be served in chapter 7 no asset case); Millsaps v. U.S., 133 B.R. 547 (Bankr. M.D. Fla. 1991) (permissively abstaining in the interests of justice from determining non-dischargeability of tax debt when debtors waited four and a half years to litigate amount of tax debt under 11 U.S.C. § 505(a) and because of the court's heavy docket); Kaufman v. U.S., 115 B.R. 378 (Bankr. S.D. Fla. 1990) (abstaining from determining debtor's tax debts for personal income taxes and penalties under 26 U.S.C. § 6672 when court's decision under 11 U.S.C. § 505(a) would not have any effect on the administration of estate); and In re Diez, 45 B.R. 137 (Bankr. S. D. Fla. 1984) (refusing to decide objection to proof of claim of IRS filed by the debtor against herself under 11 U.S.C. § 501(c) because there was no basis in law for the debtor to file such a claim and abstaining from hearing dispute about tax debt when purpose under § 505(a) to provide forum for quick determination of amount and legality of tax debt to prevent delay in the administration of the bankruptcy estate did not apply in a chapter 7 no asset case involving only the debtor and the IRS but no other creditors).

debtor's tax debt was nondischargeable but abstained from determining the amount of the tax debt under 11 U.S.C. § 505(a)(1). Bissett v. United States (In re Bissett), no. 99-0812, 1999 WL 1132312 (Bankr. E.D. Pa. November 29, 1999) (finding that abstention was not warranted in a proceeding brought by the debtor to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(1)) and Shapiro v. United States, (In re Shapiro), 188 B.R. 140 (Bankr. E.D. Pa. 1995) (concluding that a bankruptcy court is the proper forum to determine the substantive issue of the dischargeability of a tax debt but exercising its discretion to abstain from determining the amount of the debtors' tax debt under § 505(a) in a chapter 7 no asset based on the parties' consent resolution that such tax debts were non-dischargeable debts under § 523(a)(1)).

The Court rejects the United States' position. As previously stated in this opinion, the Court's authority and the framework of its analysis involves the dischargeability of a debt requirements under 11 U.S.C. § 523(a)(1), which then incorporate the requirements of § 507(a)(8)(C). Subject to certain exceptions, not relevant here, § 505(a) provides another basis for this Court to exercise its authority to determine the legality or amount of any tax. This section of the Bankruptcy Code, however, is not relevant to the matter currently before the Court. Even if § 505(a) were applicable, it should be considered as a factor, but not a dispositive one, in the Court's abstention analysis. In many of the decisions cited by the United States, the courts chose to abstain because they focused, in large part, on general unsecured creditors as being the intended beneficiaries under § 505(a) and not debtors. Yet, this interpretation is contrary to the express statutory language of § 505(a). There are only three statutory restrictions placed on a bankruptcy court's authority under § 505(a)(2), which provides that a court may not determine

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount
or legality was contested before and adjudicated by a judicial or administrative
tribunal of competent jurisdiction before the commencement of the case under
this title;

(B) any right of the estate to a tax refund, before the earlier of —

      (i) 120 days after the trustee properly requests such refund from
      the government unit from which such refund is claimed; or

      (ii) a determination by such governmental unit of such request; or

(C) the amount or legality of any amount arising in connection with an ad
valorem tax on real or personal property of the estate, if the applicable period for
contesting or redetermining that amount under any law (other than a bankruptcy
law) has expired.

None of these exceptions apply in this proceeding.

In addition, the cases cited by the United States

improperly view § 505 in isolation without proper deference to the other goals of
the Bankruptcy Code. The bankruptcy court's responsibility in administering the
estate is not only to achieve a fair and equitable distribution of assets to the
creditors, but also to "relieve the honest debtor from the weight of oppressive
indebtedness and permit him to start afresh."

Luongo v. Internal Revenue Service (In re Luongo), 259 F.3d 323, 330 (5th Cir. 2001) (holding

that bankruptcy courts should exercise jurisdiction when bankruptcy issues are involved and the

objectives under the Bankruptcy Code would be impaired unless exceptional factors involving

judicial economy, fairness, convenience to litigants, or simplicity of non-bankruptcy issues

indicate otherwise) (citation omitted). As such, it is appropriate for a court to consider the

impact of § 505(a) on the general administration of the estate and the debtor. Id. (affirming

bankruptcy court's decision to exercise jurisdiction in debtor's adversary proceeding due to

circumstances involving the rights to dischargeability, exemptions, and set-off) (other citation

omitted).

There is no dispute about the current status of the Debtors' bankruptcy estate. It has been fully administered by the Chapter 7 Trustee. No assets were available for distributions to be made to unsecured creditors. A decision rendered in this proceeding will not change or have an impact on the Debtors' assets. As a result then, there will be no effect on the body of unsecured creditors. The Court's analysis, however, does not end here.

A decision in this proceeding will impact the Debtors because the integrity of the Bankruptcy Code's objective of providing them with a fresh start is impaired. Although the United States' argues that the tax debt at issue is a non-dischargeable debt, the record before the Court does not contain any information beyond a copy of the "Request for an Assessment" issued by the Internal Revenue Service to support its position that the Debtors are "responsible persons" under 26 U.S.C. § 6672 and that the dischargeability of this debt has been established. These are the very factual issues in dispute in this proceeding.

The United States makes much of the fact that the this Court is not the proper forum for the Debtors to resolve this tax issue. Instead, it argues that the Debtors could, and should be required to, pursue the other administrative and legal remedies afforded to them under the Tax Code. If the Court agreed with the United States, the Debtors will be required to pay a portion of the tax debt and then wait, up to six months, to receive some form of a response from the Internal Revenue Service. Depending on the nature of the response, the Debtors would then have to commence a suit in district court to determine their liability as "responsible persons" under 26 U.S.C. § 6672. Several ramifications exist if this approach were followed. First, the Debtors will be required to pay a creditor that they may not have the means to pay. Second, the nature and extent of their fresh start remains uncertain until the dischargeability of the IRS obligation is

determined.  Finally, the Debtors' bankruptcy case could remain open pending the outcome of these other administrative and legal proceedings in another forum.  No interests in justice will be furthered by following this method.  Under the present circumstances, this factor weighs against abstention.

2.      Extent to which state laws dominate – No state laws are involved.  This factor does not apply.

3.      Difficulty of applicable state law – No state laws are involved.  This factor does not apply.

4.      Presence of related proceeding in another forum – There are no other proceedings pending in another forum.  This factor weighs against abstention.

5.      Jurisdictional basis other than 28 U.S.C. § 1334 – The only basis for subject matter jurisdiction in this court is 28 U.S.C. § 1334.  The Debtors' adversary proceeding, however, seeks to determine the non-dischargeability of a debt, which is a core proceeding under 28 U.S.C. § 157(b)(2).  While the Debtors have the option of addressing their disputed tax debt in another forum, they would have to pay a portion of the tax debt to do so.  There is nothing in the record to indicate that the Debtors can afford to make such a payment.  This factor weighs against abstention.

6.      Degree of relatedness or remoteness of this adversary proceeding to the bankruptcy case – This proceeding is directly related to the Debtors' bankruptcy case because it involves the non-dischargeability of a pre-petition debt.  Any determination made by this Court will impact the scope of the Debtors' discharge under § 727(a).

7.      Substance rather than form of core proceeding – The substance of this

proceeding involves a determination about the Debtors' personal liability on a pre-petition debt. The substantive law involves both bankruptcy and non-bankruptcy law. This Court is well versed in applying bankruptcy law and it is routinely called upon to apply state laws and other federal laws to resolve disputes in bankruptcy cases and proceedings. It is quite capable of applying the relevant non-bankruptcy law in this proceeding because it is not complex and well-settled.

8.     Feasibility of severing state law claims – No state claims are involved. This factor does not apply.

9.     Burden on the court's docket – The substantive and factual issues involved in this proceeding will not cause an unreasonable burden on this Court's docket. This factors weighs against abstention.

10.     Likelihood of forum shopping – There is no evidence before the Court that the Debtors engaged in forum shopping. This factor weighs against abstention.

11.     Existence of right to jury trial – The Debtors did not request a jury trial. There is no information in the current record about the United States' position as to its right to a jury trial. The weight of this factor is inconclusive.

12.     Presence of non-debtor parties – The United States is a non-debtor party that the Debtors are indebted to on a pre-petition debt in dispute. The Debtors have exercised their right under the Bankruptcy Code and Rules of Bankruptcy Procedure to commence a  non-dischargeability of debt action against the United States. This factor favors non-abstention.

13.     Unusual or significant factors – The Court is unaware of any so this factor does not apply.

23

<u>Conclusion</u>

For the reasons previously explained in this Opinion, the Court denies the United States motion to dismiss this proceeding on subject matter jurisdiction grounds or, alternatively, for this Court to permissively abstain from hearing this proceeding. An appropriate order will be entered contemporaneously upon the entry of this Opinion.

Signed on September 30, 2009

                              /s/ Daniel S. Opperman
                          Daniel S. Opperman
                          United States Bankruptcy Judge